STATE OF NEBRASKA, APPELLEE, V.
WILLIE AMMONS, APPELLANT.

305 N.W.2d 808

Filed May 15, 1981. No. 43450.

Rodney W. Smith for appellant.

Paul L. Douglas, Attorney General, and G. Roderic Anderson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

The defendant was found guilty by a jury of robbery and use of a firearm in the commission of a felony, and was sentenced to imprisonment for not less than 8 nor more than 15 years on the robbery count and not less than 2 nor more than 3 years on the firearm count, the sentences to run consecutively.

On November 6, 1979, a Safeway store in Omaha, Nebraska, was robbed by two black males. One man approached the courtesy booth in a corner of the store with a gun and demanded all the money from the clerk in the booth. The clerk put $700 to $800 in an envelope and the robber left the store with his accomplice, who had been standing a few feet away. The man with the gun was described as being approximately 5 feet 6 inches tall and weighing approximately 140 pounds. The accomplice was described as quite a bit

taller, 6 feet at least and perhaps 6 feet 2 inches. The robbery took approximately 3 minutes and the only evidence against the defendant was the eyewitness testimony of the clerk in the courtesy booth.

Following the robbery the clerk called the police and gave them a description of the robbers. The day following the robbery the clerk was shown a spread of approximately 8 to 10 photographs of police suspects. The clerk picked a photograph of Glen Harrington as looking like the robber, but made no positive identification. No police record was kept as to what other pictures were included in the spread, nor whether the defendant's picture was included. On November 29, 1979, the clerk viewed a police lineup of four black males. Michael Harrington, a brother of Glen Harrington, was one of the individuals in the lineup. The clerk was unable to identify anyone in the lineup. Both Glen and Michael Harrington are approximately the same height and size as the defendant. On December 4, 1979, the clerk was again shown a spread of eight police photographs. The clerk picked one photograph as a possible suspect but could not make a positive identification. On December 19, 1979, the police held a lineup of three individuals, including the defendant. The defendant was the only short man in the lineup. The clerk immediately identified the defendant as the man with the gun who had robbed him, and identified him again at preliminary hearing and at the trial. He testified that his identification was based on his observation of the defendant at the time of the robbery.

An information against the defendant was filed and on January 10, 1980, a plea of not guilty was entered and the cause was set for trial to the next jury panel. On March 7, 1980, the defendant filed a motion to suppress all pretrial identifications of the defendant, and the motion was scheduled for hearing on March 24, 1980. On March 11, 1980, the defendant was advised that his case would be called for trial

the following morning and suppression hearing would be held prior to the commencement of trial. The defendant made a motion for continuance which was overruled on March 12, 1980, together with the motion to suppress identifications.

Trial commenced and the State presented its case which rested entirely on the identification of the defendant by the clerk. At the conclusion of the State's case a hearing was held in chambers outside the presence of the jury and a record made of the proceedings. The prosecutor, defendant and his counsel, and a prospective witness, Michael Harrington, and his counsel were present. At the request of the defendant, Harrington had been brought to court from the penal complex where he was incarcerated.

Harrington's counsel stated that he had been notified a day or two previously that the defendant intended to call Harrington as a witness, and that he understood that the testimony of Harrington, if he took the stand, would incriminate him with respect to the offense for which the defendant was being tried. He also stated that Harrington was presently serving a 3-year sentence in the penal complex which began approximately 1 month before. Harrington's counsel also stated that that sentence was the result of pleading guilty to the charge of assault in the second degree and that there was an agreement made with the prosecutor in that case that two burglaries would be dismissed, and further that Harrington would clear up some robberies in which he was a suspect. Harrington's counsel also stated, and Harrington confirmed, that in Harrington's discussions with the prosecutor in the assault case he admitted his guilt in the robbery for which the defendant was being tried, and was assured by that prosecutor that no prosecution would result as long as he pleaded guilty to the second degree assault.

The trial judge in this case, who had also been the judge at the time of Harrington's guilty plea, in

response to an inquiry by Harrington, stated that his recollection was: "If you pled guilty to that charge, no other charge would be filed. That was the agreement, as I understood it, between you and the State."

Harrington's counsel had advised Harrington that he was not positive whether or not the State would treat Harrington's testifying in this case as a nullification of the agreement and file charges against Harrington based on the admissions he made on the witness stand, and that he had advised Harrington that the only way he could assure him there would be no prosecution would be for Harrington to take the fifth amendment if he was called as a witness.

The trial judge explained to Harrington that the court had nothing to say about whether the State brought a charge or not and that such decisions were entirely up to the prosecution, and advised Harrington that he could not tell him whether or not the county attorney was going to file a charge if Harrington testified. The prosecutor then stated for the record that the State would prosecute. The prosecutor stated his feeling that any agreement the prosecutor in the Harrington case made was "out the window" if Harrington took the stand in the present case and testified in open court that he committed the robbery.

Harrington then decided that he would take the fifth amendment and refuse to answer any questions. The prosecutor requested that Harrington not be sworn in front of the jury, and the court asked Harrington if he was called as a witness would he refuse to answer any questions about the robbery involved in this case, and upon receiving Harrington's affirmative answer, stated that Harrington had invoked his constitutional privilege, and concluded the hearing.

When the trial resumed the defendant took the stand as the only witness for the defense and denied any knowledge of or participation in the crime. He also testified that he had previously been convicted of two felonies. The jury returned a verdict of guilty and this

appeal followed.

The defendant contends that the failure to grant immunity to the witness Harrington and the actions of the prosecutor in threatening Harrington with prosecution if he took the stand and admitted committing the robbery improperly interfered with the fact-finding process and denied the defendant a fair trial. The essence of defendant's argument in this court is that the trial judge should have granted immunity to the witness Harrington. That issue was not raised at the trial level, but even if it had been such claims for defense witness immunity have been almost uniformly rejected by the courts. See *United States v. Alessio*, 528 F.2d 1079 (9th Cir. 1976), *cert. denied* 426 U.S. 948, 96 S. Ct. 3167, 49 L. Ed. 2d 1184 (1976).

The valid basis for objection here is not that the court failed to grant Harrington immunity as a witness. Instead, the issue is whether or not the prosecution intimidated Harrington and caused him to refuse to testify as a witness. The constitutional right of a defendant to call witnesses in his defense mandates that they must be called without intimidation. A prosecutor may impeach a witness in court but he may not intimidate him in or out of court. See *People v. Pena*, 383 Mich. 402, 175 N.W.2d 767 (1970). The principles set out in *Pena* were approved in the very recent case of *State v. Ivy*, 300 N.W.2d 310 (Iowa 1981). In that case, although the court declined to reverse the conviction because of the absence of prejudice, the court said: "We agree with the rationale of these cases which hold it is improper to intimidate a witness. We agree, too, that, if prejudice results, a defendant is deprived of due process." *Id.* at 314.

The foundational case for establishing the right of a defendant to present his own witnesses to establish a defense as a fundamental element of due process of law under the sixth amendment right to compulsory process is *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). That case held that

just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

Typical of cases holding that where the government has prevented a defendant's witness from testifying freely before the jury it cannot be held that the jury would not have believed the testimony or that the error is harmless is *United States v. Morrison*, 535 F.2d 223 (3d Cir. 1976). In that case the prosecutor repeatedly warned a prospective defense witness about the possibility of a perjury charge if she testified falsely, where charges against her in the matter had previously been dropped when it was disclosed that she had been under 18 years old at the time. She understood that with the dropping of the charges she was free from prosecution for her role, which was not true. In that case the Third Circuit not only reversed the defendant's conviction but held that where prosecutorial misconduct caused the defendant's prime witness to withhold, out of fear of self-incrimination, testimony which would otherwise have been available to the defendant, due process demanded that the government at a new trial request use immunity for that witness.

The same principles which apply to prosecutorial intimidation were also applied to intimidation of a single defense witness by a judge in the case of *Webb v. Texas*, 409 U.S. 95, 93 S. Ct. 351, 34 L. Ed. 2d 330 (1972). In that case the Supreme Court of the United States concluded that the judge's threatening remarks directed only at the single witness for the defense effectively drove that witness off the stand and thus deprived the petitioner of due process of law under the fourteenth amendment.

In *United States v. Thomas*, 488 F.2d 334 (6th Cir. 1973), the court held that the actions of the prosecutor, in gratuitously admonishing a witness of the possibility

that he might be prosecuted for misprision of felony if he testified, constituted prejudicial error, even though evidence of defendant's guilt was overwhelming. The court also held that the government's later statement that the witness would not be prosecuted was not sufficient to overcome the prejudice. The court held that the action of the prosecutor involved in that case substantially interfered with any free and uninhibited determination the witness might have made as to whether to testify and, if so, the content of that testimony.

In the case at bar the record is clear that the prosecutor's threat to Harrington caused Harrington to refuse to testify and resulted in depriving the defendant of that testimony. Courts are divided as to whether reversal is required for intimidation in the absence of a showing of prejudice. In the case at bar the prejudice is clear. Where the only real issue in the case involved the identification of the robber and a witness was prevented from testifying that he was the robber, it is difficult to imagine a clearer case of prejudice.

It is unnecessary to discuss the remaining issues raised by the defendant in this appeal.

REVERSED.

CLINTON, J., dissents.

HASTINGS, J., concurring.

I concur with the result reached by the majority on the ground, and only on the ground, that the State failed to honor what I believe was an enforceable plea bargain. I do not want to suggest that a judge or prosecutor who warns a witness of the possibility of self-incrimination or of the penalties for perjury has engaged in witness intimidation.

BOSLAUGH, J., joins in this concurrence.