35 So.3d 1042 (2010)
STATE of Louisiana
v.
Tracey YOUNG.
No. 2009-KK-1177.
Supreme Court of Louisiana.
April 5, 2010.
Rehearing Denied May 7, 2010.
James D. Caldwell, Atty. Gen., Hillar Clement Moore, III, Dist. Atty., Aaron D. Brooks, Dylan Christopher Alge, Asst. Dist. Attys., for Applicant.
Indigent Defender Board, Mark David Plaisance, Mark Vincent Marinoff, Michael Anthony Mitchell, Margaret Evelyn Lagattuta, for Respondent.
GUIDRY, Justice.[*]
The instant criminal proceeding involves the admissibility of expert testimony *1043 regarding the reliability of eyewitness identification. An East Baton Rouge grand jury indicted the defendant, Tracey Young, for first degree murder pursuant to Louisiana Revised Statute 14:30. After unsuccessful efforts to suppress eyewitness identifications of the defendant as the gunman, the defense gave notice of its intent to introduce expert testimony at trial on factors that might affect the reliability of the identifications. Following a hearing, the district court ruled the defendant's proffered expert in the field of eyewitness identification would be permitted to testify at trial in the event the State of Louisiana (hereafter, the "State") presented the identifications. The State sought review in the court of appeal, which found no error in the district court's ruling. We granted certiorari in this matter to address the correctness of the district court's ruling.
Upon review, we find the district court erred in allowing the introduction of the testimony of the defendant's expert. The proposed testimony on the general factors contributing to a misidentification does not satisfy the standard for admission of expert testimony articulated under Louisiana Code of Evidence article 702 because the testimony will not aid the jury in its deliberations and, instead, is inclined to be more prejudicial than probative in value. Therefore, for the reasons that follow, we vacate the district court's ruling granting the admissibility of the testimony of the defendant's proposed expert on eyewitness identification and remand the case to the district court for further proceedings.

FACTS
On September 8, 2006, East Baton Rouge Parish detectives responded to the late night shooting of two persons in a restaurant parking lot. Upon their arrival, the male victim, Aaron Arnold, was unresponsive with gunshot wounds to his upper body. He never regained consciousness and ultimately died from his injuries. The female victim, Dionne Grayson, was lying on the ground with gunshot wounds to her legs. She provided statements to detectives at the scene and hours after her admission to the hospital. Ms. Grayson informed detectives that, after leaving work, she and Mr. Arnold were in the process of putting gasoline in her vehicle when a white automobile occupied by two men pulled alongside them. She stated a black male brandishing a semiautomatic handgun exited the passenger front seat and demanded their wallets. Ms. Grayson claimed the individual shot them before they could fully comply with his request. She gave a description of the gunman's physical features.
Nancy Segura witnessed the attempted robbery and shootings. She was sitting in a vehicle in close proximity to Ms. Grayson's car, while waiting for a friend to leave work. She was not noticed by the assailants. Additionally, there were several witnesses located at a nearby coffee shop who observed the driver and the white vehicle used in the commission of the crime both prior to and after the shootings. Detectives obtained statements from the witnesses.
During the course of the police investigation, a confidential informant provided detectives with information regarding the involvement of Sanchez Brumfield, the getaway driver and the defendant's cousin. This led to information from Mr. Brumfield linking the defendant and his vehicle to the crime.[1] Ms. Segura identified the *1044 defendant from a photographic lineup as the individual who shot Mr. Arnold and Ms. Grayson. Detectives ran the defendant's name in their computer files and learned that a white vehicle similar to the model described as being involved in the crime was registered to the defendant's home address. The defendant was later arrested. Near the time of the arrest, Ms. Grayson was presented with a photographic lineup and identified the defendant as the gunman. The defendant denies any involvement in the crime.

PROCEDURAL HISTORY
A grand jury indicted the defendant for first degree murder and attempted first degree murder. The State gave notice of its intent to seek the death penalty. Thereafter, it severed the charges and announced that it would proceed solely on the charge of first degree murder, although it intended to introduce evidence of the attempted first degree murder of Ms. Grayson as res gestae.

Defense Efforts to Suppress and Exclude Identifications
The defense moved to suppress the identifications made by Ms. Segura and Ms. Grayson alleging the circumstances under which they were made were unclear. The court postponed consideration of the suppression of Ms. Segura's identification until she returned to the United States to testify at the defendant's trial. Ms. Segura is a Mexican national, who was illegally in the United States at the time of the crime. Sometime after the shootings, Ms. Segura returned to live in Mexico. At the suppression hearing, the State asserted, as it has throughout the entirety of the criminal proceedings, that it was working with the federal government to arrange for Ms. Segura's temporary return to the United States to allow her to testify at the trial.
Subsequently, the defense filed a motion in limine to exclude Ms. Segura's statements and identification of the defendant made in connection with Mr. Brumfield's trial. Based on the State's assertion that it was "feverishly" still attempting to obtain Ms. Segura's presence at the defendant's trial, the court excluded her hearsay statements, but not her testimony in the event of her appearance at trial.
The district court then proceeded with the hearing on the motion to suppress Ms. Grayson's identification. She testified that she identified the defendant from a photographic lineup conducted by police at her home two weeks after the shootings. Regarding the lineup procedure, Ms. Grayson's testimony on direct examination provided, in part:

Ms. Grayson: Basically, they gave me the lineup and, you know, said for me to, you know, have some time. Look at it. And I really didn't need that much time. II identified the guy right away.

Prosecutor: Okay. How long do you believe it took you in order to pick out the individual who shot Aaron Arnold and yourself?

Ms. Grayson: Not even a minute.

Prosecutor: Okay.

Ms. Grayson: Just a couple of seconds.
On redirect, Ms. Grayson was shown the photograph used in the lineup and asked *1045 again how long it took her to select the defendant as the gunman. She responded, "[b]asically I looked at this and I picked it. I mean itit was like five seconds. I mean it just didn't take that long at all."
On cross-examination, Ms. Grayson testified that days after her release from the hospital she was shown one or two photographic lineups prior to the one where she identified the defendant as the gunman. As to the prior lineups, Ms. Grayson testified that the detectives, as they did for the lineup where she identified the defendant, advised her that the assailant may not have been in the lineup. She contended that she was unable to "pinpoint the person" in the earlier lineups. In fact, the defendant was not depicted in these earlier photographic lineups. Ms. Grayson stated that she was under the influence of pain medication for the earlier lineups, but confirmed that she was not taking pain medication at the time she identified the defendant. Moreover, Ms. Grayson testified that she had not seen any suspects in news coverage before she identified the defendant.[2]
Following the testimony of the officer that administered the final photographic lineup to Ms. Grayson, the district court denied the motion to suppress her identification because it found no evidence that the procedure was impermissibly suggestive.

Defense Efforts to Introduce Expert Eyewitness Identification Testimony
Subsequently, the defense filed notice of its intent to introduce expert testimony at trial on factors that might affect the reliability of the State's eyewitness identifications. It conceded Louisiana courts have been cautious in admitting expert testimony regarding the reliability of eyewitness identifications for fear of improperly influencing and invading the province of the jury, citing State v. Stucke, 419 So.2d 939 (La.1982). However, it urged that scientific advances in the study of eyewitness identifications since Stucke indicates the probative value of the admission of expert testimony on the subject, when properly admitted, outweighs any prejudicial effect on the jury's decision-making process. The defense anticipated the State would ask the district court to perform its function as gatekeeper to the admissibility of expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which this Court adopted in State v. Foret, 628 So.2d 1116, 1121 (La.1993), and requested a hearing to address the proposed testimony. The State opposed the hearing, citing jurisprudence from this Court disallowing expert testimony on the reliability of eyewitness testimony.
Over the State's objection, the district court proceeded with the hearing. The defendant's proposed expert, Dr. Roy S. Malpass, Ph.D., a Texas psychology professor, testified regarding his credentials and education. He summarized his publications, professional affiliations, past and present research in facial recognition and eyewitness identification, and prior acceptance in other jurisdictions as an expert in the psychology of eyewitness identifications. Following cross-examination, the State conceded the witness was an expert in the field of psychology, but urged that the psychology of eyewitness identification is not a discipline recognized in the scientific community. The court directed its own questions to Dr. Malpass. Subsequently, *1046 the court accepted the witness as an expert in the science of psychology with a special emphasis in the field of eyewitness identification.
Thereafter, Dr. Malpass testified that he had reviewed the police reports and found that the case presents issues of cross-race identification, gun focus, the effects of stress, estimates of confidence, and the impact of identification protocol on the outcome. He testified in general about these factors based on his research. Following the parties' submission of written argument on the issue of the admissibility of Dr. Malpass' testimony, the district court ruled that the defense's expert would be permitted to testify at trial. Relying on its gatekeeping function articulated in Daubert and Foret, the court stated that the proposed testimony would be relevant in the event the State utilized eyewitness identifications at trial.
The State sought writs from the court of appeal contending the district court abused its discretion in finding that the proposed expert testimony would be relevant and not confusing to the jury. The court of appeal denied the State's writ application with one dissent. The dissenting member of the panel would have granted the writ to reverse the district court. He assigned the following reasons:
A witness qualified as an expert by knowledge, skill, experience, training, or education may testify if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. La.Code Crim. P. art. 702. The requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993). Herein, defendant failed to show that the proposed expert testimony on eyewitness identification met the standard of evidentiary reliability. Moreover, the prejudicial effect of the proposed testimony outweighs its probative value because of the substantial risk that the expert witness will have a greater influence on the jury than other evidence presented at trial. Such evidence presents the danger of invading the province of the jury and usurping its function. See State v. Higgins, XXXX-XXXX (La.4/1/05), 898 So.2d 1219, 1240; State v. Stucke, 419 So.2d 939 (La.1982).
State v. Young, unpub., 09-0154 (La.App. 1 Cir. 5/14/09) (Kuhn, J., dissenting).
This Court granted the State's application for certiorari to review the correctness of the district court's action regarding the admissibility of the proposed expert's testimony. State v. Young, 09-1177 (La.9/18/09), 17 So.3d 383.

LAW
A determination regarding the competency of a witness is a question of fact. Cheairs v. State ex rel. Dept. of Transp. & Dev., 03-0680, p. 5 (La.12/3/03), 861 So.2d 536, 541. It is well settled that a trial judge is vested with wide discretion in determining questions of fact. Therefore, rulings on the qualifications of an expert witness will not be disturbed on appeal absent manifest error. Id.
Louisiana Code of Evidence article 702 dictates the admissibility of expert testimony. It provides, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." State v. Higgins, 03-1980, p. 33 (La.4/1/05), 898 So.2d 1219, 1239. Notably, this Court has placed *1047 limitations on this codal provision in that, "[e]xpert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men." Stucke, 419 So.2d at 945.
In Foret, this Court adopted the guidelines set forth by the United States Supreme Court in Daubert for determining the reliability of expert scientific testimony under Louisiana Code of Evidence article 702. Foret, 628 So.2d at 1121. Daubert set a new standard to assist trial courts in evaluating the admissibility of expert testimony. It requires district courts to perform a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id., 509 U.S. at 589, 113 S.Ct. at 2795.
In addressing the issue of reliability, Daubert articulated the following nonexclusive factors to be considered by district courts in determining the admissibility of expert testimony:
(1) The "testability" of the scientific theory or technique;
(2) Whether the theory or technique has been subjected to peer review and publication;
(3) The known or potential rate of error; and
(4) Whether the methodology is generally accepted in the scientific community.
Cheairs, 03-0680 at 7, 861 So.2d at 541.
The United States Supreme Court later held in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999), that the Daubert analysis is to be applied to determine the admissibility of all expert testimony, not just scientific testimony. Cheairs, 03-0680 at 7, 861 So.2d at 541.
The issue of the admissibility of expert testimony on eyewitness identification is not a res nova issue for this Court. Rather, it is undisputed that the admissibility of expert testimony on eyewitness identification has been uniformly barred by this Court on the occasions the issue has been raised. The earliest decision addressing the subject is Stucke, which was rendered over a decade prior to the Daubert and Foret decisions. In Stucke, a defendant appealed his conviction for aggravated battery contending that the trial court erred in refusing to permit expert psychological testimony regarding the ability of a witness to perceive and recall events pertaining to the shooting at issue. The defendant called as a witness an experimental psychologist to "enlighten the jury as to the quality of the victim's identification so that the jury would have a standard against which they could make an evaluation of the victim's identification." Id., 419 So.2d at 944. In excluding the proffered expert testimony, the district court expressed "grave doubt about the competency of this evidence," citing concern over the fact the proposed expert's studies were based on mock scenarios. The court rejected the testimony concluding that the jury did not need the testimony to evaluate the witness' identification of the defendant and that the jury's standard in judging such evidence was within their own training and experience. Following a review of cases in other jurisdictions where the issue of the acceptance of expert testimony regarding eyewitness identification had arisen, this Court found no error in the district court's failure to admit the expert's testimony:
We conclude that the prejudicial effect of such testimony outweighs its probative value because of the substantial risk that the potential persuasive appearance of the expert witness will have a greater influence on the jury than the *1048 other evidence presented during the trial. Such testimony invades the province of the jury and usurps its function.
We therefore conclude that the trial court did not abuse his discretion in failing to allow the expert witness to testify. The testimony sought to be elicited from him would not have been an aid to the jury.

Id., 419 So.2d at 945.
In State v. Higgins, 03-1980, pp. 33-35 (La.4/1/05), 898 So.2d 1219, 1239-40, this Court's second occasion to address the issue of admission of eyewitness identification testimony, we again determined the proposed expert testimony was unnecessary.[3] This decision did not reference Daubert or Foret, although it was decided after the adoption of the new test for the admissibility of expert testimony. Addressing Stucke, this Court stated:
Because of the risk that expert testimony on eyewitness identification "will have a greater influence on the jury than other evidence presented at trial," and because such evidence presents the danger of "`invad[ing] the field of common knowledge, experience, and education of men []'" this Court has held that the prejudicial impact of such evidence would substantially outweigh its probative value. Stucke, 419 So.2d at 945 (quoting 3 Am.Jur.2d, Expert and Opinion Evidence, § 21; 100 A.L.R.2d 1421, 92 A.L.R. 1223).

Higgins, 03-1980 at 33-34, 898 So.2d at 1240.
Applying Stucke to the facts in Higgins, we found no error in the trial court's exclusion of the evidence on the basis that the expert's specialized knowledge would impinge on the province of the jury:
While the defendant claims that the particular facts of this case present the rare instance in which the "`specialized knowledge' of an expert in the form of opinion evidence would assist the jury in deciding the question of identity," Stucke, 419 So.2d at 951 (Lemmon, J., concurring), with the possible exception of the effect of alcohol on Brown's ability to process the world around her, the proposed expert testimony likely presented an invasion into a reasonable juror's common knowledge. See State v. Ammons, 208 Neb. 797, 305 N.W.2d 812, 814 (1981) (the prejudicial effect of a psychologist's testimony on a witness's identification outweighs its probative value); see also [State v.] Ford, 608 So.2d [1058] at 1061 [(La.App. 1st Cir. 1992)] (expert testimony regarding the fallibility of human perception and memory generally is unnecessary to resolve the issues regarding the reliability of an identification); see generally Elizabeth Loftus, Eyewitness Testimony Civil and Criminal (1997). The trial court thus properly excluded this expert testimony, and defendant's third assignment of error fails to have merit.
Higgins, 03-1980 at 34-35, 898 So.2d at 1240.
See also State v. Bozeman, pp. 4-8 (La. App. 5 Cir. 1/30/07), 951 So.2d 1171, 1173-1176 (appellate court examined Stucke in light of Higgins, ultimately finding no error *1049 in excluding proffered expert testimony on eyewitness identifications).
We now apply this codal and case law to the facts.

DISCUSSION
The State argues the district court misapplied the tests articulated under Daubert and Foret. Specifically, it contends the court erred in qualifying Dr. Malpass as an expert in a field before determining whether the discipline itself satisfied the standards for reliability. The State argues that the "field of eyewitness identification psychology" has no known error rate, its findings are insufficiently quantifiable, and its theories are not falsifiable. It contends there has been no new jurisprudence or compelling scientific advances, since this Court's seminal decision in Stucke, to warrant reconsideration of this Court's ban on expert testimony regarding the validity of eyewitness identification. The State also contests the district court's findings as to Dr. Malpass' qualifications as an expert and the relevancy of his testimony.
Conversely, the defense urges the district court properly performed its gatekeeping function articulated under Daubert and Foret. It claims emerging social science research in the field of eyewitness identification validates the reliability of the proposed testimony and, as such, warrants this Court revisiting the vitality of Stucke. As evidence of the recognized field of study, the defense relies on the fact several jurisdictions that previously barred the admission of such testimony have changed their position on the issue.[4] It also contends Dr. Malpass is well-qualified to testify as an expert based on his professional background, which includes publicly-funded research and his participation in developing law enforcement guidelines, and his extensive history of testifying as an expert in numerous other court proceedings.
This Court is cognizant of the ongoing legal debate over the admissibility of expert psychological testimony on the validity of eyewitness identification. Generally, criminal defendants suggest jurors are ignorant of the alleged inadequacies of eyewitness testimony. Their proposed remedy is to allow qualified cognitive and memory experts to essentially educate jurors on the factors allegedly outside of the common experience that contribute to unreliability and inaccuracies in eyewitness testimony. These factors would include observations involving significant stress, weapon focus, cross-race identification, identification based on time delays, and psychological phenomena, such as the feedback factor and unconscious transference, among others.[5]See United States v. Langan, 263 F.3d 613, 621 (6th Cir. 2001).
Unquestionably, eyewitness identifications can be imperfect. However, upon review, the touted advances in the social sciences regarding the validity of eyewitness identifications do not render obsolete the underlying premise for which such evidence *1050 was held to be inadmissible in Stucke. There is still a compelling concern that a potentially persuasive expert testifying as to the generalities of the inaccuracies and unreliability of eyewitness observations, that are already within a juror's common knowledge and experience, will greatly influence the jury more than the evidence presented at trial. Higgins, 03-1980 at 33-34, 898 So.2d at 1240; Stucke, 419 So.2d at 945. By merely being labeled as a specialist in eyewitness identifications, an expert has the broad ability to mislead a jury through the "education" process into believing a certain factor in an eyewitness identification makes that identification less reliable than it truly is. See United States v. Angleton, 269 F.Supp.2d 868, 873-874 (S.D.Tx.2003); United States v. Lester, 254 F.Supp.2d 602, 608-609 (E.D.Va.2003). Moreover, expert testimony on eyewitness identifications can be more prejudicial than probative because it focuses on the things that produce error without reference to those factors that improve the accuracy of identifications. The expert testimony presumes a misidentification, in the absence of presenting factors which support the validity of the identification. This fosters a disbelief of eyewitnesses by jurors.
This Court has long been reluctant to allow experts to offer opinions on the credibility of another witness for fear of the expert invading what is considered the exclusive province of the jury. Moreover, the concept of promoting battles of experts over whether the testimony of every witness is truthful and reliable is not desirable. These considerations are especially compelling in cases involving eyewitness identifications where any alleged deficiencies could easily be highlighted through effective cross-examination and artfully crafted jury instructions. United States v. Rincon, 28 F.3d 921, 921 (9th Cir.1994); United States v. Harris, 995 F.2d 532, 535 (4th Cir.1993).
With this in mind, we decline to overrule our decision in Stucke barring the admissibility of eyewitness identification testimony. We conclude the district court erred in finding the proposed testimony satisfied the standard for admission of expert testimony under Louisiana Code of Evidence article 702.[6] The testimony will not assist the jury in its deliberations.

CONCLUSION
There is no reason for us to disturb our earlier ruling in Stucke barring the admission of the expert testimony at issue. The proposed testimony on the general factors potentially contributing to a misidentification does not satisfy the standard articulated under Louisiana Code of Evidence article 702. While being aware of the vast discretion to be afforded to trial courts in their determinations of the admissibility of expert evidence, we find the district court abused its discretion in allowing Dr. Malpass to testify at trial.

DECREE
For the reasons stated herein, the ruling of the district court permitting the admission of the defendant's proposed expert testimony on the validity of eyewitness identifications is vacated. The case is remanded to the district court for further proceedings.
*1051 DISTRICT COURT JUDGMENT VACATED; CASE REMANDED TO THE DISTRICT COURT.
JOHNSON, KNOLL and WEIMER, JJ., concur and assign reasons.
JOHNSON, Justice, concurs and assigns reasons.
I concur with the majority opinion vacating the district court's ruling permitting the admission of testimony by defendant's expert on the validity of eyewitness identification. However, I disagree with the majority's finding that State v. Stucke, 419 So.2d 939, 945 (La.1982) serves as a complete bar to the admission of expert testimony regarding eyewitness identification. In Stucke, this Court held that the trial court did not abuse its discretion in excluding expert witness regarding the quality of an identification. This Court, in addressing the then res nova issue, reasoned as follows:
[T]he prejudicial effect of such testimony outweighs its probative value because of the substantial risk that the potential persuasive appearance of the expert witness will have a greater influence on the jury than the other evidence presented during the trial. Such testimony invades the province of the jury and usurps its function. State v. Stucke, 419 So.2d at 945.
Other Louisiana courts have relied upon the Stucke decision when denying the admissibility of expert witness testimony on eyewitness identification.[1] Although not legislatively overruled, the Stucke case must be examined in light of the provisions of the Louisiana Code of Evidence regarding expert testimony that followed the Stucke decision, since the Stucke decision was rendered prior to the enactment of the Louisiana Code of Evidence and repeal by Acts 1988, No. 515, § 8 of the provisions in La. R.S. 15:464 et seq., regarding expert testimony.
The trial in the instant case occurred after January 1, 1989, therefore the provisions of the Louisiana Code of Evidence are applicable to the case herein.
La.C.E. art. 403 states:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of un-due delay, or waste of time.
La.C.E. art. 702 states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. State v. Ford, 608 So.2d 1058 at 1062, (1st Cir.1992).
Rather than establishing a brightline rule, our jurisprudence has determined that the admissibility of expert witness testimony should be made on a case by case basis. In State v. Chapman, 436 So.2d 451, 453 (La.1983), the trial court allowed expert testimony concerning studies which generally reflected the fallibility of eyewitness identification in certain circumstances. Although the question of admissibility was not an issue on appeal in Chapman, this Court, in a footnote, cited the Stucke decision, and discussed the concurring opinion in Stucke which emphasized the trial court's discretion in admitting such evidence, in the interest of justice, when the court determines that the proffered evidence would assist the jury in deciding the question of identity.
*1052 The United States Supreme Court noted the inherent problems in eyewitness identification testimony decades ago in its first attempt to establish constitutional safeguards governing the admission of eyewitness evidence of identification in criminal trials.[2] The Court, in a trilogy of cases,[3] stated: "The vagaries of eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identification...."[4] Although the majority concludes that the expert testimony on eyewitness identification somehow invades the province of the jury, Federal Rules of Evidence have eliminated this rationale, providing that: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R.Evid. 704(a). Additionally, this reasoning has been explicitly rejected by the federal courts.[5]
In the case at bar, I agree, that based on the facts presented, the majority is correct in vacating the trial court's ruling admitting the expert testimony because there were multiple eyewitnesses, and ample corroborating evidence to support defendant's conviction. The fallibility of human perception and memory, in general, is consideration in those cases where the lone witness' identification is not supported by other testimony or evidence. It is my view, that expert witness testimony regarding the reliability of eyewitness identification is not per se inadmissible in every case.
KNOLL, Justice, additionally concurring.
The Daubert/Foret standard of evidentiary reliability requires an expert's opinion be grounded in methods and procedures of science, rather than subjective belief or unsupported speculation. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116 (La.1993). In light of the record evidence demonstrating the "field of eyewitness identification psychology" has no known error rate, no reliable testing format, insufficiently quantifiable findings, non-falsifiable theories, and lacks a methodology generally accepted in the scientific community, I find the State has more than convincingly demonstrated an expert's testimony regarding this "field of eyewitness identification psychology" will never be able to satisfy the applicable standard. Therefore, in my view, the resolution of the issue in this case concerning the admissibility of expert testimony regarding this "junk science" is best resolved by the adoption of a per se/bright-line rule of inadmissibility.
WEIMER, J., concurring.
Because there are facts in this matter which corroborate the eyewitness identification, I concur in the result.
NOTES
[*] Kimball, C.J., participated in oral argument but did not participate in the deliberation of this opinion.
[1] The driver of the vehicle, Sanchez Brumfield, was convicted and sentenced to death for his participation in the crime. His conviction is currently pending appeal. Mr. Brumfield has stated he will not testify at the defendant's proceedings regarding his statement implicating the defendant as the gunman and the owner of the vehicle used in the commission of the crime. In the instant proceedings, the district court granted defense counsel's motion in limine to bar the State from putting Mr. Brumfield on the witness stand in the event the prosecution anticipated his intention to exercise his Fifth Amendment privilege against self-incrimination and remain silent.
[2] Ms. Grayson's identification of the defendant occurred prior to his arrest being publicized.
[3] The defendant sought to call an expert in eyewitness identification to explain to the jury his findings that intoxication greatly increases the likelihood of false identification, that little correlation exists between the confidence expressed by an eyewitness and the actual reliability of that witness' identification, that the chance of misidentification increases with the length of time between incident and identification, and that facts gathered from secondary sources after observing the event in question tend to skew a witness' perception of that event.
[4] The defense cites to post-Stucke decisions from other jurisdictions that have held expert evidence on the general deficiencies of eyewitness identifications to be admissible under some circumstances: Echavarria v. State, 108 Nev. 734, 839 P.2d 589 (1992); United States v. Rincon, 28 F.3d 921 (9th Cir.1994); United States v. Smith, 156 F.3d 1046 (10th Cir. 1998).
[5] "Feedback factor" involves the effect of post-event information on the memory of the event, including discussions among witnesses that may unconsciously reinforce mistaken identifications. "Unconscious transference" allows a person to remember a face but not the circumstances under which the person saw the face.
[6] Even those jurisdictions which allow this type of expert testimony have held that it is not admissible when there is substantial evidence of corroboration. See, e.g., U.S. v. Martin, 391 F.3d 949 (8th Cir.2004); U.S. v. Crotteau, 218 F.3d 826 (7th Cir.2000); Manley v. State, 284 Ga. 840, 672 S.E.2d 654 (2009); People v. Goodwillie, 147 Cal.App.4th 695, 54 Cal.Rptr.3d 601 (2007); People v. Jones, 30 Cal.4th 1084, 1112, 135 Cal.Rptr.2d 370, 70 P.3d 359 (2003); People v. McDonald, 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709 (1984).
[1] See State v. Gurley, 565 So.2d 1055, 1057-1058 (La.App. 4th Cir.1990), writ denied, 575 So.2d 386 (La.1991); State v. Coleman, 486 So.2d 995, 1000 (La.App. 2d Cir.), writ denied, 493 So.2d 634 (La.1986).
[2] Nathan R. Sobel, Eye-witness Identification; Legal and Practical Problems 1 (2d ed.1981).
[3] Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
[4] United States v. Wade, 388 U.S. at 228, 87 S.Ct. 1926 (footnotes omitted).
[5] See United States v. Rogers, 769 F.2d 1418, 1425 (9th Cir. 1985), and the U.S. Supreme Court's rejection of a similar argument in Barefoot v. Estelle, 463 U.S. 880, 899, 103 S.Ct. 3383, 3397-98, 77 L.Ed.2d 1090 (1983).