419 So.2d 939 (1982)
STATE of Louisiana
v.
Bruce F. STUCKE.
No. 81-KA-3088.
Supreme Court of Louisiana.
September 7, 1982.
*941 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, *942 Dist. Atty., Abbott J. Reeves, P. Michael Cullen, Arthur J. Lentini, Asst. Dist. Attys., for plaintiff-appellee.
Lawrence Blake Jones, Scheuermann & Jones, New Orleans, for defendant-appellant.
WILLIAM NORRIS, III, Justice Ad Hoc.[*]
Defendant was charged by bill of information with attempted first degree murder in violation of La.R.S. 14:27 and 14:30 respectively. After trial by jury, he was found guilty of aggravated battery and sentenced to serve ten years at hard labor. It is from this conviction and sentence that defendant appeals urging twelve assignments of error.

FACTS
On November 20, 1980, at approximately 12:15 a. m. Deputy Charles Donovan while off duty from the Jefferson Parish Sheriff's Office was approached at a Metairie Exxon Station by Deputy Barry Wood, also off duty, who advised Deputy Donovan that he believed an armed robbery was in progress at the Time Saver Store across the street from the service station. Prior to leaving the store, Deputy Wood had alerted the Time Saver employee on duty of a possible shoplifting attempt. When he exited, he noticed two men, one of whom was clad in a long coat from which an object was protruding that appeared to be a gun stock. Thereafter, he proceeded immediately to the service station to obtain assistance when he saw Deputy Donovan. The deputies advised the station's night attendant to contact the Sheriff's office before they returned to the Time Saver.
As the deputies approached the store, they saw a man standing near the wall walk up to the window of the store and motion to another man who was inside. The inside man immediately came out of the store and both men ran to the back of the building. The deputies, after identifying themselves and ordering the suspects to halt, pursued the men on foot. Woods pursued and subsequently lost the man suspected of carrying the gun. Donovan pursued the other suspect and as he neared him shouted again that he was a police officer after which he again ordered him to stop. At that point, the suspect stopped but turned and pointed a blue steel revolver in Donovan's direction. Donovan then pointed his gun at the suspect with the revolver but was shot in the right arm before he could fire. Donovan dropped his weapon when he was shot and was attempting to retrieve his gun with his left hand when he saw the man whom he later identified as defendant, Bruce Stucke, standing near him pointing a single barrel shotgun in his direction. When Donovan attempted to remove himself from the defendant's line of fire, the defendant fired striking Donovan in the left arm. Donovan thereafter looked up and saw the defendant standing a few feet away, pointing the shotgun at him again, and threatening to kill him.
Deputy Woods heard the shots, returned toward their location and observed the assailant advancing toward Donovan. Woods then fired at the assailant which caused him to flee to a waiting automobile.
The defendant was tentatively identified from a photographic line-up by Donovan as the person who had shot him and identified again by Donovan from a physical line-up conducted two weeks later.
ASSIGNMENTS OF ERROR NOS. 1 AND 11
In these two assignments of error, defendant contends that the trial court erred in refusing to permit expert psychological testimony regarding the ability of a witness to perceive and recall events pertaining to the shooting incident. He further asserts that the trial court erred in refusing to admit a proffer of the expert testimony sought and that the trial court erred in *943 failing to suppress the photographic and line-up identifications of defendant.
Defendant filed a Motion to Suppress the photographic and line-up identifications. At the hearing on the motion Deputy Donovan testified that he gave a description of the suspect to three officers. While Donovan was hospitalized on the night of the shooting, three men were brought to the hospital for him to view. At that time, he mentioned to the other officers that one of the men somewhat resembled the assailant's physical appearance but did not identify him as the assailant. He further reviewed approximately 200 photographs while he was in the hospital but was unable to identify anyone.
Donovan viewed more photographs after he returned home identifying both the defendant and his co-defendant from photographic line-ups. His identification of defendant from the photographic line-up was not positive, but he requested that defendant be placed in a physical line-up. At the physical line-up [which was viewed and agreed to by defendant's attorney] Donovan positively identified the defendant as his assailant.
Defendant argues that the "prior depiction of the photographic spread of line-ups was impermissibly suggestive and reduced the degree of accuracy that would enable someone at a physical line-up to correctly identify the perpetrator." He further contends that the fact that defendant and one other line-up participant were wearing black crepe, jail-issued shoes made the line-up suggestive.
We conclude that defendant's contention that the fact that defendant was one of two line-up participants wearing jail issued shoes rendered it suggestive is without merit. It was established that at the jail soft soled shoes were distributed to inmates who only had hard soled shoes. However, if at time of arrest, a prisoner had soft soled shoes, e.g., tennis shoes, then no issue is necessary. In the instant line-up, two participants (one of whom is defendant) appear to be wearing jail issued shoes, three were in tennis shoes, and one was in hard soled shoes. The participant in hard soled shoes was defendant's brother placed in the line-up at defense counsel's request. Additionally, defense counsel was present during the line-up and our review of the record does not reveal that he objected to the wearing of jail issued shoes. Viewing the procedure as a whole, this factor does not render the line-up unduly suggestive.
We have carefully reviewed the record and the evidence does not indicate that the identification procedures were unduly suggestive. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 S.Ct. 140 (1977).
In the instant case the photographs of the line-up are in the record for our review. Our review of the six subjects in the line-up leads us to conclude that it was not suggestive. It is clear from the testimony adduced at the hearing on the motion to suppress identification that the procedures employed relative to the showing of the photographs and the conducting of the line-up were proper and free from undue suggestiveness. There was a sufficient matching of basic physical appearance, [e.g. build, hair, facial hair, and complexion] of the participants to reasonably test the identification. See State v. Guillot, 353 So.2d 1005 (La.1977); State v. Gray, 351 So.2d 448 (La. 1977); State v. Anthony, 347 So.2d 483 (La. 1977).
Even if the identification procedures had been determined to have been suggestive, that alone would not render the identification inadmissible nor result in reversal. See State v. Nicholas, 397 So.2d 1308 (La.1981). State v. Davis, 385 So.2d 193 (La.1980). In the testimony of the victim here, he was positive in his identification of the defendant. He testified that he had an opportunity to view his face at the time of the shooting and the degree of his attention to the face of defendant was high because of the very nature of the incident. See State v. Guillot, supra.
The trial court did not err in refusing to suppress the identification of defendant. The totality of circumstances here demonstrates that the identification was reliable.
*944 Defendant further contends that the trial court erred in excluding the testimony of an expert concerning the quality of an identification. At trial defendant called as a witness Dr. Robert Buckhout, an experimental psychologist who specializes in the psychology of witnesses. Defendant sought to elicit testimony from this witness to enlighten the jury as to the quality of the victim's identification so that the jury would have a standard against which they could make an evaluation of the victim's identification. Dr. Buckhout testified that in his studies he creates incidents for case crimes and stages them in live situations. In other words the crimes are staged; the person acting as the criminal and very often the victim are both actors. No actual crime has ever been an issue in his studies and none of his victims have been shot in his staged crimes.
After argument, the trial judge ruled that the doctor's testimony would not be presented to the jury because of his "grave doubt about the competency of this evidence." This concern was the manner in which the tests were conducted and the number of variables in the experiments. He further rejected this testimony concluding that the jury did not need this testimony to evaluate the identification of defendant and that the jury's standard in judging such evidence is their own training and experience.
It is a well settled rule that a trial judge is vested with wide discretion in determining the competence of an expert witness. State v. Boyer, 406 So.2d 143 (1981). Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge; his rulings on the qualification of expert witnesses will not be disturbed in the absence of manifest error. State v. Drew, 360 So.2d 500 (La.1978).
Although our research has revealed no cases where the issue of the acceptance of expert testimony regarding eyewitness identification has arisen in Louisiana, we have noted such cases in other jurisdictions. In State v. Ammons, 208 Neb. 797, 305 N.W.2d 812 (1981), the Supreme Court, in a case which involved a robbery, affirmed the trial court's refusal to allow a psychologist to testify to prove that eyewitness identification testimony tends to be inaccurate and unreliable. The trial court held that the prejudicial effect of the testimony outweighed its probative value, that the issue was not a proper subject for expert testimony and that the evidence would usurp the function of the jury. The Supreme Court further noted that the accuracy or inaccuracy of eyewitness observation is a common experience of daily life and such testimony would invade the province of the jury.
The Supreme Court of Nevada considered this issue in Porter v. State, 576 P.2d 275 (Nev.1978), which involved a prosecution for robbery where defendant offered testimony from a clinical psychologist to challenge the validity of the eyewitness identification. The trial court rejected the testimony on the grounds that the proffered testimony was not in a recognized field of expertise, the foundation was inadequate, and it would invade the province of the jury. The appellate court affirmed the rejection on the basis that there was no express showing that the witness would have addressed himself to the testimony of the victim with reference to the victim's retention and recollection capacity, the effect of stress (if any) on the victim's power of perception or other relevant considerations. Rather, he would have testified about the unreliability of eyewitness accounts in general. The court further concluded that there existed a substantial risk that the potential persuasive appearance of the expert witness would have had a greater influence on the jury than the evidence presented at trial, thereby interfering with the province of the jury.
United States v. Brown, 540 F.2d 1048 (10th Cir. 1976), involved another situation where a defendant was charged and convicted of taking money from an FSLIC institution by force and violence by the use of a pistol. The trial court refused to permit defendant's expert witness to testify to the limitation and weakness of lay eye-witness identification. The witness offered *945 was a psychologist who had conducted studies of eye-witness identification and problems of perception. The court therein stated:
Generally, expert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men. 3. Am.Jur.2d, Expert and Opinion Evidence, § 21; 100 A.L.R.2d 1421; 92 A.L.R. 1223. Put another way, the test of admissibility is often predicated upon the proposition that opinion evidence cannot usurp the functions of the jury or be received if it touches the very issue before the jury. Frase v. Henry, 444 F.2d 1228 (10th Cir. 1971); Wigmore on Evidence, Third Ed., Vol. VII, §§ 1920, 1921; 31 Am.Jur.2d, Expert and Opinion Evidence, § 22.

* * * * * *
In United States v. Brown, 501 F.2d 146, 150 (9th Cir. 1974), reversed on other ground, United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (decided June 23, 1975), the Court said:
Nobles offered the testimony of Dr. Robert Buckhout as an expert witness to describe the problems of eyewitness identification in general and the specific difficulties with the identifications in this case. The court refused the proffered testimony, concluding that the testimony would invade the province of the jury, that the undue consumption of time would substantially outweigh its probative value, and that the offer of proof was inadequate. We in turn cannot conclude that the trial court was in error. United States v. Amaral, 488 F.2d 1148 (9th Cir. 1973).
We, too cannot conclude in the case at bar that the trial court erred. (540 F.2d at 1054).
It should be noted that the testimony in United States v. Brown, 501 F.2d 146 (9th Cir. 1974), sought to be admitted was from the same expert offered in the instant case on behalf of the defendant.
The rationale expressed in the foregoing cases is equally applicable to the instant case. We conclude that the prejudicial effect of such testimony outweighs its probative value because of the substantial risk that the potential persuasive appearance of the expert witness will have a greater influence on the jury than the other evidence presented during the trial. Such testimony invades the province of the jury and usurps its function.
We therefore conclude that the trial court did not abuse his discretion in failing to allow the expert witness to testify. The testimony sought to be elicited from him would not have been an aid to the jury. We further conclude for the reasons contained herein that the trial court did not err in denying defendant's motion for a proffer of the evidence.
These assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant contends that the trial court erred in refusing to admit an unsigned report from the FBI which showed that one of the early suspects in the shooting had recently fired a gun.
At trial one of the officers testified that three individuals were arrested on the night of the shooting but were later eliminated as suspects. Prior to their elimination as suspects, a neutron activation test of their hands was made. Defendant argues that an unsigned FBI report on the results of the neutron activation test showed that one of the suspects had recently fired a gun. When counsel for defendant sought to introduce the report at trial, the state objected on the basis that it was hearsay which objection was sustained by the court.
Because the defense sought to introduce the report for the truth of its contents, the evidence was clearly hearsay. State v. Martin, 356 So.2d 1370 (La.1978). While scientific reports may be admissible at trial under the business record exception to the hearsay rule [State v. Perniciaro, 374 So.2d 1244 (La.1979).], the trial court's exclusion of the evidence in this case was not erroneous. *946 The unsigned report offered no assurance that its writer spoke from personal knowledge about the neutron activation test nor that the writer was in a position to vouch for its reliability. Furthermore, defense counsel made no showing that the writer was unavailable for trial. All of these requirements are key elements in the application of the business record exception. See State v. Perniciaro, supra. The underlying basis of the exception is the probable trustworthiness of the evidence. Therefore, the trial court was correct in its ruling.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
In this assignment defendant contends that the trial court erred in disallowing the introduction of the results of a polygraph examination of two of defendant's seven alibi witnesses and in failing to order a polygraph examination of defendant.
Our review of the record indicates that the purpose for which the introduction of the results of the polygraph tests was sought was to persuade the jury that the defendant was innocent of the crime charged. In State v. Catanese, 368 So.2d 975 (La.1979) we concluded that for numerous reasons it should be the judicial policy of Louisiana to exclude polygraph evidence in criminal trials because its probative value is so outweighed by the reasons for its exclusion, i.e., its accompanying dangers.
Based on the rationale expressed in Catanese, the trial judge did not err in barring the introduction of the polygraph examinations or in failing to allow the defendant to submit to a polygraph examination.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4
In this assignment, defendant contends that the trial court erred in refusing to admit defendant to bail after his conviction pending his appeal to this court.
Defendant was convicted of aggravated battery, received the maximum sentence of ten years at hard labor, and was remanded to the Department of Corrections. Defendant then requested that the trial court allow him to remain free on bail pending this appeal. The state opposed the motion which was denied.
The applicable provision is Article I, Section 18 of the 1974 Louisiana Constitution which provides:
After sentencing and until final judgment, a person shall be bailable if the sentence actually imposed is five years or less; and the judge may grant bail if the sentence actually imposed exceeds imprisonment of five years. [Emphasis added.]
It is clear under this article that a defendant has no mandatory right to bail pending appeal after he receives a sentence of ten years at hard labor. This provision leaves the matter solely within the discretion of the trial judge when he imposes a sentence in excess of five years. We conclude that the trial judge did not abuse his discretion in denying defendant bail.
The record shows that defendant was convicted of a serious offenseaggravated battery resulting from his shooting a police officer. The evidence adduced at trial shows that not only did defendant threaten to kill the officer but that he was prevented from doing so only by the intervention of another officer. Additionally, defendant's expressed belief at sentencing that he was being unjustly persecuted tends to support a conclusion that he may abscond pending the final disposition of his case. Under these circumstances, the trial judge obviously considered defendant to be a poor bail risk pending appeal. Thus, we cannot say he abused his discretion by denying bail. See State v. Glass, 389 So.2d 387 (La.1980).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5
In this assignment, defendant contends that the trial court erred in imposing an excessive sentence by sentencing him to serve ten years at hard labor, the maximum sentence which could have been imposed for a violation of La.R.S. 14:34 [Aggravated battery].
During sentencing, the trial judge stated that defendant was a twenty-eight year old male first felony offender with a prior arrest *947 for aggravated battery and a misdemeanor conviction for possession of marijuana. While recognizing that under these circumstances a suspended sustence was not expressly prohibited, the trial court felt that such a sentence would be totally inappropriate under the circumstances of this case. The court felt that the violent act of shooting a police officer who was in the lawful exercise of his duties in protecting the lives and property of the people of the parish necessitated a maximum sentence because anything less would deprecate the seriousness of the offense. The judge further stated for the record that he had considered the defendant's background as well as the seriousness of the crime and had concluded that the maximum sentence must be imposed.
Our review indicates that the trial judge adequately complied with the requirements of La.C.Cr.P. Art. 894.1 in sentencing this defendant. Therefore, our review now focuses on whether the great discretion afforded the trial court in sentencing has been abused in this case. See State v. Cox, 369 So.2d 118 (La.1979).
We conclude that the trial court did not abuse its discretion in imposing the maximum sentence. The test for determining the excessiveness of a sentence is whether or not it is grossly out of proportion to the crime or whether or not it is nothing more than the purposeless or needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). We have noted prior that maximum sentences are appropriately imposed in cases involving the most serious violations of the described offense, and for the worst kind of offender. State v. Jones, 398 So.2d 1049 (La.1981). The evidence is sufficient to support a verdict of guilty of attempted second degree murder. The facts show that defendant was attempting to commit armed robbery with a loaded shotgun. There is also ample evidence to conclude that not only did defendant shoot the officer two times but that he was in the process of attempting to inflict a third, possibly fatal wound when he was fired at by the other officer. Under the circumstances of this case, we cannot say the trial judge abused his discretion in imposing the maximum sentence.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 6
In this assignment defendant contends that the trial judge erred in restricting his voir dire examination of prospective jurors.
It is well established that the scope of voir dire examination is within the trial judge's discretion and his ruling will not be disturbed in the absence of a clear abuse of that discretion. State v. Robinson, 404 So.2d 907 (La.1981). In evaluating the fairness of the ruling, the entire examination must be considered. State v. Robinson, supra; State v. Monroe, 329 So.2d 193 (La. 1976).
A review of the entire voir dire examination in the instant case shows that the defendant was afforded wide latitude in the examination of prospective jurors. The complained of ruling was only an attempt by the trial judge to have defense counsel clarify a confusing question. Furthermore, the trial judge admonished the prospective jurors that defendant had a right to complete voir dire and that the court did not want them to infer from its statement that the question should not be asked. There was no restriction of voir dire examination in this case.
This assignment of error is without merit.
ASSIGNMENTS OF ERROR NOS. 7 AND 9
In this assignment, defendant contends that the trial court erred in admitting evidence of the attempted armed robbery, and the aggravated assault after the firing of the two shots at the victim. He further asserts that it was error for the state to elicit certain testimony from his brother and sister-in-law concerning defendant's behavior a short time after the shooting.
Although defendant concedes that the attempted armed robbery and threat to the victim were part of the res gestae, he contends that the probative value of this evidence was outweighed by its prejudicial effect. *948 He further contends that the prejudicial effect must balance the probative value. We disagree.
All of the evidence complained of is clearly a part of the res gestae. What forms any part of the res gestae is always admissible. La.R.S. 15:447 and 448; State v. Drew, 360 So.2d 500 (La.1978). Evidence of other crimes which are part of the res gestae is always admissible without balancing its probative value against its prejudicial effect. State v. Williams, 375 So.2d 364 (La. 1979); State v. Wilson, 363 So.2d 481 (La. 1978).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 10
In this assignment of error, defendant contends that the trial court erred in denying his discovery requests.
Defendant filed a motion for disclosure, a motion for discovery and inspection, and a motion for a bill of particulars. A hearing was held on these pre-trial motions and certain of defendant's requests were denied.[1]
We note initially that it is conceded by defendant that the state allowed defense counsel to review its entire file. Additionally, the hearing on the discovery motions was held after the preliminary examination and defense counsel was aware of most of the answers requested. In his brief, defense counsel argues that "full discovery of all tape recorded statements of witnesses identifying others [suspects] miss identifying (sic), or changing characteristics of identification as absolutely essential here." However, he fails to state why under these particular circumstances they are essential. Under the facts of this case, it appears that he received all of the information available to the district attorney.
Additionally, defendant does not have a right to the names and addresses of state witnesses. State v. Jackson, 362 So.2d 1082 (La.1978); State v. Passman, 345 So.2d 874 (La.1977). Furthermore, La.C. Cr.P. Art. 723, relative to state information, and disclosure provides:
"This chapter does not authorize the discovery or inspection ... of statements made by witnesses or prospective witnesses,... to the district attorney, or to agents of the state."
While the article does not prohibit the discovery of the names and addresses of state witnesses or the discovery of the statements of state witnesses, rulings of the trial judge in pre-trial matters are generally shown great deference absent a clear showing of abuse of discretion. See, e.g., State v. Burch, 365 So.2d 1263 (La.1978); State v. Thornton, 351 So.2d 480 (La.1977); State v. Huizar, 332 So.2d 449 (La.1976). In his discretion, the trial judge refused to order such discovery. We cannot say that his ruling was an abuse of his discretion. The defendant cannot use discovery motions as a vehicle to discover the details of evidence with which the state expects to prove its case. See generally, State v. Hennigan, 404 So.2d 222 (La.1981); State v. Landry, 384 So.2d 786 (La.1980); State v. Carthan, 377 So.2d 308 (La.1979); State v. Hunter, 340 So.2d 226 (La.1976).
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 12
In this assignment of error defendant contends that the trial court erred in failing to declare a mistrial based on a defense witness' prejudicial reference to other crimes committed by defendant.
Defendant's sole argument is that the girlfriend of defendant was obviously not capable of understanding the importance of not referring to past arrests or crimes of the defendant and that the forced statement by counsel in the presence of the jury to put on the record the grounds for the mistrial is especially onerous.
At trial, Linda Diecke, defendant's girlfriend, testified as an alibi witness for the *949 defense. On direct examination she testified that she had formerly been convicted of the crime of possession of marijuana. On cross examination she testified that she was on probation for possession of marijuana and that she was employed until "[r]right before [she] got into trouble."
The state then sought by a line of questioning to find out the relationship between the witness and the defendant at the time of this offense and at the time of trial. The witness testified she was no longer defendant's girlfriend. The state then asked, "So how long have you not been his girlfriend?" to which the witness replied unresponsively, "Since we got in all this trouble, the marijuana." The witness' answer was confusing and ambiguous in that it could have indicated that she was involved with the defendant in the instant offense. No objection was made at this point, however. The prosecutor then asked, obviously trying to pinpoint the previous answer:
Q. So, since when is that:
A. November, I think it was November 27th.
Q. So, you just broke it off with him, then?
A. No, I didn't really break it off.
At this point, defense counsel asked for both counsel to approach the bench which was done. The court did deny his request that the jury be removed. Thereafter, defense counsel stated[2] that the questioning was headed toward revealing to the jury prior arrests or prior criminal activities of his client. The state responded that it did not call the witness and ask for the unresponsive testimony. No motion or objection was made, but the court stated "Motions are denied. Let's continue." This ruling [which was surplusage in that no motions of record had been made] was objected to and defense counsel requested a mistrial which was properly denied.
The state then proceeded as follows:
Q. So, youyou broke off the relationship on November 27, 1980?
A. No, I just didn't break it off, you know, right when we got into that trouble.
The witness' answer was again unresponsive in that the latter part of the answer referring to "that trouble" was unnecessary. Furthermore, it was confusing still as to when she broke off the relationship and as to whether or not she was possibly talking about the instant offense or just "trouble" such as may occur between a boyfriend and girlfriend. Again in order to clarify the unresponsive and ambiguous answer of the witness, the prosecutor asked:
Q. Who's we?
A. Huh?
Q. Who is ____
At this point defense counsel objected and before the court had a chance to rule on the objection, the witness responded:
A. We? I didn't say "we."
This answer was directly contrary to her previous answer. The court overruled the objection and the prosecutor repeated, "Who is `we?'" at which point defense counsel requested a mistrial. Before the court could rule on the request the witness blurted out the answer, "We is me and Bruce." At this point defense counsel admonished his witness as he had done earlier not to answer until the judge gave her permission.
The motion for mistrial at that point before the court as to the prosecutor's previous question was denied. Defense counsel objected to the denial but did not again move for a mistrial based on the witness' volunteered answer. The prosecutor then asked:
Q. So when did you break it off?
The witness' answer was again vague and unresponsive but did not allude to any "trouble." Thereafter, no references to arrests, crimes, or "trouble" were made by the witness.
*950 The unresponsive, spontaneous and ambiguous remarks of defendant's own witness do not necessarily lead to the assumption that another crime was referred to. They might just as well have referred to something in connection with this particular crime or to personal trouble which the witness was having with the defendant. In the context of the interrogation, the state was trying to elicit the witness' personal attitude or feeling toward the defendant in order to show bias. This was certainly relevant to her credibility as she was seeking to provide defendant with an alibi.
Under these particular circumstances, the witness' reference to "trouble" and the unobjected to cryptic reference to "marijuana" were unsolicited references and not imputable to the state. See State v. Jones, 332 So.2d 466 (La.1976).
Therefore, this situation does not entitle the defendant to a mistrial under La.C.Cr.P. Art. 770. A direct or indirect reference to a crime committed or alleged to have been committed by a defendant, as to which evidence would be inadmissible made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument, would require a mistrial on motion of the defendant. La.C. Cr.P. Art. 770(2), A defense witness is not a "court official." Rather La.C.Cr.P. Art. 771 would be applicable to the instant situation.
La.C.Cr.P. Art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
It does not appear, we do not find, nor does defendant contend that the allegedly impermissible remarks by the defendant's own witness deliberately were planned or were obtained by the design of the prosecutor to prejudice the rights of the defendant. The answers and remarks were unsolicited, volunteered, ambiguous and unresponsive as had been much of her testimony while on cross-examination. Certainly the references were not designed or uttered by the witness to prejudice the defendant. Furthermore, her remarks were at most cryptic, obscure references to other crimes made without elaboration or explanation. See State v. Jackson, 396 So.2d 1291 (La.1981).
Additionally, even if the witness's unresponsive answers had been crystal clear that defendant had been in trouble over marijuana, introduction of the evidence does not constitute reversible error. In light of the entire record, we cannot say that knowledge of Stucke's involvement with marijuana would so inflame the jury that it would unjustifiably convict the accused of aggravated battery. See State v. Vernon, 385 So.2d 200 (La.1980).
Even conceding the applicability of La.C. Cr.P. Art. 771(2) it does not follow that a mistrial should have been granted since in the absence of clear prejudice the defendant is only entitled to request that the judge admonish the jury to disregard the objectionable remark of the witness. No such request was made, and the motion for mistrial was properly denied. See State v. Lewis, 315 So.2d 626 (La.1975).
This assignment of error is without merit.
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
DIXON, C. J., concurs.
LEMMON, J., concurs and assigns reasons.
*951 LEMMON, Justice, concurring.
Although I agree that the trial judge, under the circumstances of this case, did not abuse his discretion in refusing to permit defendant to offer the testimony of the "identification expert", it is not necessary to decide whether the trial court must, under all circumstances, exclude such testimony as unhelpful to the trier of fact. Trial courts should not view this decision as imposing a "rule of inadmissibility" with regard to expert testimony of the nature offered here. Rather, trial courts should cautiously approach the question of admissibility of such evidence in each instance and decide whether, under the peculiar facts of the particular case, the "specialized knowledge" of an expert in the form of opinion evidence would assist the jury in deciding the question of identity. See Fed.R.Evid. 702.
NOTES
[*] Judges William Norris, III, and Fred C. Sexton, Jr., of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] The requests denied concerned the disclosure of the juvenile, youthful offender and adult criminal record of the victim and the victim's mental status and character. Defendant also requested the name and business address of every individual who participated in the line-up.
[2] It is unclear from the record if this statement was at the bench or within the hearing of the jury. However, even if it was within the hearing of the jury we note defense counsel's failure prior to argument to advise the court of any basis for the removal of the jury.