951 So.2d 1171 (2007)
STATE of Louisiana
v.
Leonard BOZEMAN.
No. 06-KA-679.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 2007.
*1172 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Donald A. Rowan, Jr., Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
WALTER J. ROTHSCHILD, Judge.
This is defendant's second appeal. As a result of his first appeal, this Court vacated defendant's conviction and sentence for armed robbery, finding that the trial court erred in denying defendant's challenge for cause during jury selection, and this Court remanded the matter for a new trial.[1]State v. Bozeman, 03-897 (La. App. 5 Cir. 1/27/04), 866 So.2d 1029, writ denied, 04-0497 (La.7/2/04), 877 So.2d 141. On remand, the trial court conducted a hearing to determine whether or not defendant would be permitted to call an expert in eyewitness identification at trial. At the conclusion of the hearing, the trial court ruled that testimony from defendant's expert would not be admitted at trial. Defendant sought review of this ruling, but writs were denied by this Court on November 30, 2004 and by the Louisiana Supreme Court on April 1, 2005. State v. Bozeman, 04-3194 (La.4/1/05), 897 So.2d 601.
On July 26, 2006, defendant entered a plea of guilty pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) and, pursuant to State v. Crosby, 338 So.2d 584 (La.1976), he reserved his right to appeal the trial court's pre-trial ruling. Defendant was sentenced to twenty-five years at hard labor without the benefit of parole, probation, or suspension of sentence. He now comes before this Court on his second appeal.
FACTS
The facts of this case were previously set forth in State v. Bozeman, supra at 1031, as follows:
At approximately 11:00 p.m. on August 10, 2002, Samantha Lore was working at an E-Z Serve on Metairie Road when a man, later identified as defendant, Leonard *1173 Bozeman, came to the counter with two small bottles of Gatorade. After Ms. Lore rang up the drinks, Leonard Bozeman pointed a gun at her and said, "put the money in the bag, b* * * *." Ms. Lore testified that Leonard Bozeman specifically demanded twenty-dollar bills, but Ms. Lore stated that she did not have any so she proceeded to give him five-dollar bills. She explained that he made her lift the cash register drawer to make sure there were no twenty-dollar bills under it. He then took all the loose change from the drawer, counting it as he took it.
Leonard Bozeman started to move toward the door, but turned back and demanded Kool cigarette cartons. Ms. Lore testified that there were no cartons so she gave him all the loose packs she could find. Leonard Bozeman left the store taking the money, cigarettes, and several pairs of sunglasses.
Ms. Lore testified that she immediately called the police and her manager. She explained that when the police arrived, she gave the officer a description of the perpetrator. About a week later, the police came to her home and showed her a photographic lineup. She testified that she identified Leonard Bozeman out of the photographic lineup as the person who robbed her because "it was definitely him." Ms. Lore again positively identified Leonard Bozeman in court as the perpetrator three separate times during her testimony.
DISCUSSION
On appeal, defendant argues that the trial court erred in excluding the testimony of his expert pertaining to eyewitness identification, which effectively hampered his right to present a defense. He argues that expert testimony was needed to assist the jury in judging the evidence; namely, the reliability of the victim's identification which was the only issue in dispute. Defendant acknowledges that the Louisiana Supreme Court ruled against the admission of expert testimony on eyewitness identification in State v. Stucke, 419 So.2d 939 (La.1982), but he contends that it is time to revisit the rationale of the old jurisprudence.
The State asserts that this Court already ruled on this issue when it denied defendant's writ application on November 30, 2004. It contends there have been no new factual developments in the case or new jurisprudence that would require reconsideration of the prior ruling. Alternatively, the State argues that the Louisiana Supreme Court recently reaffirmed its position against the admissibility of expert eyewitness identification testimony in State v. Higgins, 03-1980 (La.4/1/05), 898 So.2d 1219, cert. denied, ___ U.S. ___, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). It also maintains the trial court did not abuse its wide discretion in excluding the expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
The record shows that a Daubert hearing was conducted on September 24, 2004 to determine the admissibility of the testimony of defense expert, Dr. John Brigham, pertaining to eyewitness identification. Dr. Brigham testified he was a professor of psychology at Florida State University and that he had spent the last 25 years focusing his research on the factors that affect the accuracy of eyewitness memory. He stated that he has published several articles on the subject and has received several research grants, including one from the National Institute of Justice to study eyewitness memory.
*1174 Dr. Brigham explained that research on eyewitness identification started in the 1970's. He testified about the various studies conducted and the statistical information gathered. He stated that from these studies he has learned that eyewitness memory is different from ordinary memory. Dr. Brigham then discussed factors that affect the reliability of eyewitness memory.
On cross-examination, Dr. Brigham admitted he has not always been allowed to testify about his studies. He stated he has been accepted as an expert 23 times in various courts across the country and denied expert status 30 to 40 times. He testified that studies on eyewitness memory and identification are widely accepted within the scientific community but acceptance varies from state to state in the legal realm.
At the conclusion of the hearing, the trial judge ruled that Dr. Brigham's testimony was inadmissible. The trial judge explained that the testimony would confuse the jury more than it would assist them. He further stated the Code of Evidence prevents the admission of this type of testimony.
Thereafter, defendant filed an application for supervisory writs with this Court. This Court denied the writ stating, "On the showing made, we find no reason to exercise our supervisory jurisdiction." Defendant then filed a writ application with the Louisiana Supreme Court, which was denied by a vote of four to three. On July 26, 2006, defendant pled guilty under North Carolina v. Alford, supra, and State v. Crosby, supra, reserving his right to appeal the trial court's pre-trial ruling.
Under the doctrine of "law of the case," an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. State v. Doussan, 05-586 (La.App. 5 Cir. 2/14/06), 924 So.2d 333, 339, writ denied, 06-608 (La.10/13/06), 939 So.2d 372. However, the appellate court's denial of supervisory writs does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion on the issue. State v. Williams, 05-318 (La.App. 5 Cir. 1/17/06), 921 So.2d 1033, 1035, writ denied, 06-973 (La.11/3/06), 940 So.2d 654. Because this Court declined to exercise its supervisory jurisdiction and did not rule on the merits of defendant's writ application, we find that the law of the case doctrine is inapplicable and we address the merits of defendant's claim that the testimony of his expert should not have been excluded.
The admissibility of expert testimony is governed by LSA-C.E. art. 702 which states, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Louisiana Supreme Court has explained that "[g]enerally, expert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men." State v. Stucke, supra at 945. The purpose of an expert witness, particularly in criminal cases, is to provide jurors with a basic knowledge and background on a subject, while the jury retains its ultimate role as fact finder. State v. Tran, 97-640 (La.App. 5 Cir. 3/11/98), 709 So.2d 311, 314.
In Daubert v. Merrell Dow Pharmaceuticals, Inc., supra, the United States Supreme *1175 Court set forth the following factors to be considered in determining the reliability of expert testimony: 1) whether the theory or technique has been subjected to peer review and/or publication, 2) the known or potential rate of error, 3) the testability of the theory or technique, and 4) whether the methodology is generally accepted in the scientific community. In State v. Foret, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court adopted the test for reliability of expert scientific testimony set forth by the United States Supreme Court in Daubert, as a guide to determining the admissibility of expert testimony under LSA-C.E. art. 702.
In Foret, the Louisiana Supreme Court stated that the trial court was "to act in a `gatekeeping' function to `ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." State v. Foret, supra at 1122, quoting Daubert. The court explained that "[t]he reliability of expert testimony is to be ensured by a requirement that there be a `valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" It further stated "[t]his connection is to be examined in light of a `preliminary assessment' by the trial court of `whether the reasoning or methodology properly can be applied to the facts in issue." Id.
Prior to Daubert and Foret, the Louisiana Supreme Court decided State v. Stucke, supra. In Stucke, the defendant argued the trial court erred in excluding the testimony of an expert concerning the quality of an identification. The defendant asserted the testimony was necessary so the jury would have a standard against which they could evaluate the victim's identification. The Louisiana Supreme Court held the trial court did not abuse its discretion in failing to allow the expert witness to testify and stated:
. . . the prejudicial effect of such testimony outweighs its probative value because of the substantial risk that the potential persuasive appearance of the expert witness will have a greater influence on the jury than the other evidence presented during the trial. Such testimony invades the province of the jury and usurps its function.
State v. Stucke, supra at 945.
In State v. Higgins, 03-1980 (La.4/1/05), 898 So.2d 1219, 1239-1340, cert. denied, ___ U.S. ___, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005), the Louisiana Supreme Court again ruled on the issue of the admissibility of expert testimony concerning the reliability of eyewitness testimony. The supreme court did not discuss or mention Daubert or Foret, but relied on its earlier decision in Stucke and concluded the expert testimony was properly excluded. Relying on Stucke, the court stated:
Because of the risk that expert testimony on eyewitness identification "will have a greater influence on the jury than other evidence presented at trial," and because such evidence presents the danger of "`invad[ing] the field of common knowledge, experience, and education of men []'" this Court has held that the prejudicial impact of such evidence would substantially outweigh its probative value.
State v. Higgins, supra at 1240.
In Higgins, the supreme court found the testimony of Dr. John Brigham, the same expert in the present case, inadmissible. The supreme court noted Dr. Brigham would have testified regarding his findings after years of studying the reliability of eyewitness testimony. The court concluded the proposed expert testimony was being offered to diminish the credibility of an *1176 eyewitness and "likely presented an invasion into a reasonable juror's common knowledge." Id.
Likewise, in the present case, Dr. Brigham's testimony was being offered to challenge the credibility of the victim's identification. Thus, considering the applicable law and jurisprudence, especially State v. Higgins, supra, we find that the trial court did not err in excluding Dr. Brigham's expert testimony. Accordingly, this assignment of error is without merit.
In his second assignment of error, defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. This Court performed an error patent review of the original record in this case at the time of defendant's first appeal. Thus, this error patent review was limited to the new proceedings conducted on remand. The following errors were noted.
The trial court failed to completely advise defendant of the prescriptive period for filing an application for post-conviction relief. According to the transcript, the trial judge advised defendant that he had "two years from the date the sentence becomes final to file post conviction relief applications." This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341 (La. App. 5 Cir. 10/26/04), 887 So.2d 596, 598. Although the commitment reflects that the notice stated that the prescriptive period runs from after judgment of conviction and sentence are final, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). Thus, we remand the case and order the trial court to advise defendant by written notice within 10 days of the rendition of the opinion that he has two years from the date his conviction and sentence become final to file an application for post-conviction relief, and then to file written proof in the record that defendant received the notice. See State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 835.
Also, although the commitment reflects defendant entered his guilty plea under North Carolina v. Alford, supra, it does not reflect defendant also entered his plea under State v. Crosby, supra. Accordingly, in order to ensure an accurate record, we remand and order the trial court to correct the commitment to reflect that defendant entered his guilty plea under State v. Crosby, as well as North Carolina v. Alford.
DECREE
For the reasons set forth above, we affirm defendant's conviction and sentence. We remand the matter and order the trial court to advise defendant of the proper prescriptive period for filing for post-conviction relief by sending him written notice within 10 days of the rendition of the opinion, and then filing written proof in the record that defendant received the notice. We further order the trial court to correct the commitment to reflect that defendant entered his guilty plea under State v. Crosby.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Defendant was charged with two counts of armed robbery. He pled guilty to count one and was convicted by a jury on count two. He only appealed his conviction and sentence on count two.