TOBIAS, J.,
concurs.
hFor all intents and purposes, Mr. Henry’s conviction is based exclusively on eyewitness identification. My reading of the record satisfies me that the jury could rationally find on the evidence presented that the defendant was guilty beyond a reasonable doubt of the crimes of which he was accused and stands convicted. I respectfully concur to address further one issue discussed by the majority.
In his written motion in limine, the defendant sought to present John C. Brigham, Ph.D., whose testimony would address the suggestibility of lineups that are improperly composed.[1] As orally argued on 1 August 2011, the defense counsel stated:
We just have a couple of comments on the Motion in Limina [sic] regarding expert, Mr. Brigham [,] regarding memory. Our only point and it was set out in the Motion was that he is not going to give opinion testimony regarding any ultimate issue. What he is doing is talking about how memories are formed. He is there as an educational witness and we have a kind of unique situation here in that it is how did the line-up procedures affect memory. Expert Brigham is not going to talk about any of the issues that were set forth by the
*1162 Supreme Court about witnesses ability under the circumstances, the timing, the lighting, the distance, the stress, weapon focus, etcetera [sic]. It simply is not going to be any of|2his testimony. He is going to address the lineup procedures. * * *
He is not going to be offering opinion testimony ... about the witnesses reliability.
The court refused to allow Dr. Brigham to be called. However, in his motion for new trial, the defendant argued that the trial court improperly prevented the testimony of Richard Ernest. Mr. Ernest is an expert in the field of eyewitness identification, to testify “about how suggestive police procedures can lead good people to pick a photo [out of a photographic line-up] not based on their perceptions and memory but as a result of poor police investigative procedures.” The trial court also refused to allow Mr. Ernest to be called. Although the defendant attempts to limit the purposes for which he wanted to call Mr. Ernest, the issue relates to the unreliability of eyewitness identification where the eyewitness identifies an individual previously unknown to him or her.
At the time of trial, Louisiana law relating to eyewitness identification was controlled by the then latest jurisprudential expression by the Louisiana Supreme Court in State v. Young, 09-1177 (La.4/5/10), 85 So.Bd 1042, a first degree murder case in which corroborating evidence supported the eyewitness identification. I quote the Court’s reasoning:
The State argues the district court misapplied the tests articulated under Daubert and Foret. Specifically, it contends the court erred in qualifying Dr. Malpass as an expert in a field before determining whether the discipline itself satisfied the standards for reliability. The State argues that the “field of eyewitness identification psychology” has no known error rate, its findings are insufficiently quantifiable, and its theories are not falsifiable. It contends there has been no new jurisprudence or compelling scientific advances, since this Court’s seminal decision in [State u] Stucke, [419 So.2d 939 (La.1982) ] to warrant reconsideration of this Court’s ban on expert testimony regarding the validity of eyewitness identification. The State also contests the district court’s findings as to Dr. Malpass’ qualifications as an expert and the relevancy of his testimony.
| ¡¡Conversely, the defense urges the district court properly performed its ga-tekeeping function articulated under Daubert and Foret. It claims emerging social science research in the field of eyewitness identification validates the reliability of the proposed testimony and, as such, warrants this Court revisiting the vitality of Stucke. As evidence of the recognized field of study, the defense relies on the fact several jurisdictions that previously barred the admission of such testimony have changed their position on the issue. It also contends Dr. Malpass is well-qualified to testify as an expert based on his professional background, which includes publicly-funded research and his participation in developing law enforcement guidelines, and his extensive history of testifying as an expert in numerous other court proceedings.
This Court is cognizant of the ongoing legal debate over the admissibility of expert psychological testimony on the validity of eyewitness identification. Generally, criminal defendants suggest jurors are ignorant of the alleged inadequacies of eyewitness testimony. Their proposed remedy is to allow qualified cognitive and memory experts to essentially educate jurors on the factors allegedly outside of the common experience *1163 that contribute to unreliability and inaccuracies in eyewitness testimony. These factors would include observations involving significant stress, weapon focus, cross-race identification, identification based on time delays, and psychological phenomena, such as the feedback factor and unconscious transference, among others. See United States v. Langan, 26B F.3d 613, 621 (6th Cir. 2001).
Unquestionably, eyewitness identifications can be imperfect. However, upon review, the touted advances in the social sciences regarding the validity of eyewitness identifications do not render obsolete the underlying premise for which such evidence was held to be inadmissible in Stucke. There is still a compelling concern that a potentially persuasive expert testifying as to the generalities of the inaccuracies and unreliability of eyewitness observations, that are already within a juror’s common knowledge and experience, will greatly influence the jury more than the evidence presented at trial. Higgins, 03-1980 at 33-34, 898 So.2d at 1240; Stucke, 419 So.2d at 945. By merely being labeled as a specialist in eyewitness identifications, an expert has the broad ability to mislead a jury through the “education” process into believing a certain factor in an eyewitness identification makes that identification less reliable than it truly is. See United States v. Angleton, 269 F.Supp.2d 868, 873-874 (S.D.Tx.2003); United States v. Lester, 254 F.Supp.2d 602, 608-609 (E.D.Va.2003). Moreover, Rexpert testimony on eyewitness identifications can be more prejudicial than probative because it focuses on the things that produce error without reference to those factors that improve the accuracy of identifications. The expert testimony presumes a misidentification, in the absence of presenting factors which support the validity of the identification. This fosters a disbelief of eyewitnesses by jurors.
This Court has long been reluctant to allow experts to offer opinions on the credibility of another witness for fear of the expert invading what is considered the exclusive province of the jury. Moreover, the concept of promoting battles of experts over whether the testimony of every witness is truthful and reliable is not desirable. These considerations are especially compelling in cases involving eyewitness identifications where any alleged deficiencies could easily be highlighted through effective cross-examination and artfully crafted jury instructions. United States v. Rincon, 28 F.3d 921, 921 (9th Cir. 1994); United States v. Harris, 995 F.2d 532, 535 (4th Cir.1993).
With this in mind, we decline to overrule our decision in Stucke barring the admissibility of eyewitness identification testimony. We conclude the district court erred in finding the proposed testimony satisfied the standard for admission of expert testimony under Louisiana Code of Evidence article 702. The testimony will not assist the jury in its deliberations.
* * *
There is no reason for us to disturb our earlier ruling in Stucke barring the admission of the expert testimony at issue. The proposed testimony on the general factors potentially contributing to a misidentification does not satisfy the standard articulated under Louisiana Code of Evidence article 702. While being aware of the vast discretion to be afforded to trial courts in their determinations of the admissibility of expert evidence, we find the district court abused its discretion in allowing Dr. Malpass to testify at trial.
*1164 In a concurring opinion, Justice Johnson stated:
I concur with the majority opinion vacating the district court’s ruling permitting the admission of testimony by defendant’s expert on the validity of eyewitness identification. However, I disagree with the majority’s finding that State v. Stucke, 419 So.2d 939, 945 (La.1982) serves as a complete bar to the admission of expert testimony regarding eyewitness identification. In Stucke, this Court held that the trial court did not abuse |5its discretion in excluding expert witness regarding the quality of an identification.
[[Image here]]
Rather than establishing a brightline rule, our jurisprudence has determined that the admissibility of expert witness testimony should be made on a case by case basis. In State v. Chapman, 436 So.2d 451, 453 (La.1983), the trial court allowed expert testimony concerning studies which generally reflected the fallibility of eyewitness identification in certain circumstances. Although the question of admissibility was not an issue on appeal in Chapman, this Court, in a footnote, cited the Stucke decision, and discussed the concurring opinion in Stucke which emphasized the trial court’s discretion in admitting such evidence, in the interest of justice, when the court determines that the proffered evidence would assist the jury in deciding the question of identity.
The United States Supreme Court noted the inherent problems in eyewitness identification testimony decades ago in its first attempt to establish constitutional safeguards governing the admission of eyewitness evidence of identification in criminal trials.™[2] The Court, in a trilogy of cases, stated: “The vagaries of eye-witness identification are well known; the annals of criminal law are rife with instances of mistaken identifi-cation_” Although the majority concludes that the expert testimony on eyewitness identification somehow invades the province of the jury, Federal Rules of Evidence have eliminated this rationale, providing that: “Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.” Fed. R.Evid. 704(a). Additionally, this reasoning has been explicitly rejected by the federal courts.
In the case at bar, I agree, that based on the facts presented, the majority is correct in vacating the trial court’s ruling admitting the expert testimony because there were multiple eyewitnesses, and ample corroborating evidence to support defendant’s conviction. The fallibility of human perception and memory, in general, is consideration in those cases where the lone witness’ identification is not supported by other testimony or evidence. It is my view, that expert witness testimony regarding the reliability of eyewitness identification is not per se inadmissible in every case,
j¡¿Young, 09-1177, pp. 11-13 (La.4/5/10), 35 So.3d 1042, 1049-50 [footnotes omitted].
As I read Young, the Court directed that no expert witness may address at trial the issue of the unreliability of eyewitness identification.
In State v. Stucke, 419 So.2d 939 (La.1982), a pre-Daubert/Foret aggravated battery case in which the Court did not address what corroborating evidence, if any, was present, the Supreme Court established the standard for admission of expert testimony addressing the reliability of eyewitness identification:[2]
*1165 The rationale expressed in the foregoing cases [from other jurisdictions] is equally applicable to the instant case. We conclude that the prejudicial effect of such testimony outweighs its probative value because of the substantial risk that the potential persuasive appearance of the expert witness will have a greater influence on the jury than the other evidence presented during the trial. Such testimony invades the province of the jury and usurps its function.
We therefore conclude that the trial court did not abuse his discretion in failing to allow the expert witness to testify. The testimony sought to be elicited from him would not have been an aid to the jury. We further conclude for the reasons contained herein that the trial court did not err in denying defendant’s motion for a proffer of the evidence.
Id. at 945 [emphasis supplied].
In a concurring opinion, Justice Lem-mon noted:
Although I agree that the trial judge, under the circumstances of this case, did not abuse his discretion in refusing to permit defendant to offer the testimony of the “identification expert”, it is not necessary to decide whether the trial court must, under all circumstances, exclude such testimony as unhelpful to the trier of fact. Trial courts should not view this decision as imposing a “rule of inadmissibility” with regard to expert testimony |7of the nature offered here. Rather, trial courts should cautiously approach the question of admissibility of such evidence in each instance and decide whether, under the peculiar facts of the particular case, the “specialized knowledge” of an expert in the form of opinion evidence would assist the jury in deciding the question of identity. See Fed.R.Evid. art. 702.
Id. at 951 [emphasis in original].
Thus, my reading of Stucke is that it stands for the proposition that a trial court has the discretion in certain undisclosed circumstances on a case-by-case basis to allow an expert to testify about the reliability of eyewitness identifications. The case does not prohibit such evidence.
In 1983, following close on the heels of Stucke, the Supreme Court was again called upon to address the issue of eyewitness identification in State v. Chapman, 436 So.2d 451, 453 (La.1983), a non-capital aggravated rape case where physical evidence was present to support the conviction. The Court stated:
At the trial, defendant presented the testimony of an expert concerning studies which tended to discredit eyewitness identification generally.FN6 In addition, several alibi witnesses testified that defendant was in a local barroom at the approximate time of the rape. Defendant also testified, flatly denying that he was the rapist and directly contradicting the testimony of some of the investigating officers. Despite his firm denials and a vigorously presented defense, the jury obviously credited the victim’s positive identification, as corroborated by some circumstantial evidence (which by itself was by no means conclusive).
[[Image here]]
FN6. The trial court permitted Dr. Robert Buckhout, a psychologist, to testify concerning his research which substantially tended to discredit the accuracy of much eyewitness testimony, especially when the victim’s observations were made under certain circumstances (such as those present in defendant’s situation).
This court held in State v. Stucke, 419 So.2d 939 (La.1982), that defendant was not entitled to offer such evidence, on the theory that the potential persuasiveness of this type of *1166 testimony might have a greater influence |son the jury than the other evidence and might thus invade the province of the jury. A concurring opinion emphasized that the trial judge may (as was done here) exercise his discretion in favor of admitting such evidence, in the interest of justice, when the judge determines that the proffered evidence would assist the jury in deciding the question of identity.
Id. at 951 [emphasis supplied].
In my view, Chapman stands for the proposition that a conviction may be upheld when a trial judge, utilizing his discretion, permits evidence relating to eyewitness identification where corroborative evidence, circumstantial in nature, has been introduced to support a finding of guilt. That is, a trial judge has the discretion to permit expert evidence on the reliability of eyewitness identification.
Approximately three years after Chapman, the Second Circuit was called upon to address the same issue in State v. Coleman, 486 So.2d 995, 1000 (La.App. 2d Cir. 1986), writ denied, 493 So.2d 634 (La.1986), a case involving an armed robbery, aggravated rape, and aggravated crimes against nature. Absent in Coleman is any discussion of corroborative evidence. In sustaining the trial court’s decision to exclude an expert witness to testify concerning the reliability of eyewitness identification, the court stated:
In State v. Stucke, 419 So.2d 939 (La. 1982), refusal to allow an experimental psychologist to testify concerning the quality of an identification was held not an abuse of discretion, in view of the substantial risk that the potential persuasive appearance of an expert witness would have greater influence on the jury than the other evidence presented during the trial.
Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge; his rulings on the qualification of expert witnesses will not be disturbed in the absence of manifest error. State v. Trosclair, 443 So.2d 1098 (La.1983); State v. Williams, 431 So.2d 885 (La.App. 2d Cir.1983).
The trial judge did not abuse his discretion in refusing to allow this expert witness to testify. The ^prejudicial effect of such testimony outweighs its probative value because of the substantial risk that the potential persuasive appearance of the expert witness will have a greater influence on the jury than the other evidence presented during the trial. Such testimony invades the province of the jury and usurps its function.
This court addressed the issue in State v. Gurley, 565 So.2d 1055 (La.App. 4th Cir.1990), writ denied, 575 So.2d 386 (La.1991). The defendant therein was charged with second degree murder. Absent was physical evidence tying the accused to the crime; three eyewitnesses gave testimony identifying the accused as the perpetrator. We said:
The defendant’s second assignment of error asserts that the trial court erred in refusing to allow expert testimony on the psychological factors affecting reliability of eyewitness identifications.
The Louisiana Supreme Court in State v. Stucke, 419 So.2d 939 (La.1982), ruled against the admission of expert testimony relative to eyewitness identifications. The Court held as follows:
We conclude that the prejudicial effect of such testimony outweighs its probative value because of the substantial risk that the potential persuasive appearance of the expert witness will have a greater influence on the jury than the other evidence presented during the trial. Such testimony *1167 invades the province of the jury and usurps its function.
We therefore conclude that the trial court did not abuse his discretion in failing to allow the expert witness to testify. The testimony sought to be elicited from him would not have been an aid to the jury.
Other Louisiana decisions which have addressed this issue have relied upon the Stucke decision and found that the trial court did not abuse its discretion in refusing to allow expert testimony on the reliability of eyewitness identification. State v. Mims, 501 So.2d 962 (La.App. 2d Cir.1987); State v. Coleman, 486 So.2d 995 (La.App. 2nd Cir.1986), writ denied, 493 So.2d 634 (La.1986). Id. at 1057-58 [emphasis supplied].
11flThis court impliedly agreed that the standard of review for admissibility of an expert on the unreliable nature of eyewitness identification was abuse of discretion.
The Louisiana Supreme Court again visited the issue in State v. Higgins, 031980 (La.4/1/05), 898 So.2d 1219. The case was a first degree murder reduced to second degree murder; substantial physical evidence to support multiple eyewitness identifications and other corroborating evidence was adduced. The Court stated:
In his third assignment of error, the defendant claims the trial court erred in refusing to allow expert testimony concerning the causes of misidentification. Specifically, this testimony was to be offered in order to diminish the credibility of eyewitness Wanda Brown.
As a general matter, under La.C.E. art. 702, “if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify ... in the form of an opinion or otherwise.” In reviewing an expert’s qualifications, the “trial judge is vested with wide discretion in determining the competence of an expert witness. Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge; h[er] rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error.” State v. Stucke, 419 So.2d 939, 944 (La.1982)(cit-ing State v. Drew, 360 So.2d 500 (La.1978)).
Under Stucke and its progeny, a trial court may exclude expert testimony regarding the reliability of eyewitness identification. Stucke, 419 So.2d at 945; see also State v. Ford, 608 So.2d 1058, 1060-1061 (La.App. 1st Cir.1992); State v. Velez, 588 So.2d 116, 134 (La.App. 3 Cir.1991). Because of the risk that expert testimony on eyewitness identification “will have a greater influence on the jury than other evidence presented at trial,” and because such evidence presents the danger of “ ‘invad[ing] the field of common knowledge, experience, and education of men []’” this Court has held that the prejudicial impact of such evidence would substantially outweigh its probative value. Stucke, 419 So.2d at 945 (quoting 3 Am.Jur.2d, In Expert and Opinion Evidence, § 21; 100 A.L.R.2d 1421, 92 A.L.R. 1223).
In the instant case, the defendant wished to call Dr. John C. Brigham, an expert in eyewitness identification, who would have testified regarding his findings after years of studying the reliability of eyewitness testimony. Specifically, Brigham sought to explain to the jury his findings that, inter alia, intoxication greatly increases the likelihood of false identification, that little correlation exists between the confidence expressed by an eyewitness and the actual reliability of that witness’s identification, that the chance of misidentification increases *1168 ■with the length of time between incident and identification, and that facts gathered from secondary sources after observing the event in question tend to skew a witness’s perception of that event. While the defendant claims that the particular facts of this case present the rare instance in which the “ ‘specialized knowledge’ of an expert in the form of opinion evidence would assist the jury in deciding the question of identity,” Stucke, 419 So.2d at 951 (Lemmon, J., concurring), with the possible exception of the effect of alcohol on Brown’s ability to process the world around her, the proposed expert testimony likely presented an invasion into a reasonable juror’s common knowledge. See State v. Ammons, 208 Neb. 797, 305 N.W.2d 812, 814 (1981) (the prejudicial effect of a psychologist’s testimony on a witness’s identification outweighs its probative value); see also Ford, 608 So.2d at 1061 (expert testimony regarding the fallibility of human perception and memory generally is unnecessary to resolve the issues regarding the reliability of an identification); see generally Elizabeth Loftus, Eyewitness Testimony Civil and Criminal (1997). The trial court thus properly excluded this expert testimony, and defendant’s third assignment of error fails to have merit.
Id. at pp. pp. 33-35, 898 So.2d at 1239-40 [footnote omitted].
The Court again stated that the standard of review is abuse of discretion and a trial court does not err in excluding an eyewitness identification expert.
In the case at bar, I cannot say that the trial court ruled incorrectly on the issue by following Louisiana Supreme Court jurisprudence, and more specifically Young, which excludes an expert’s testimony relating to eyewitness identifications. Nevertheless, here the only evidence against the accused is eyewitness identifications by individuals who were not familiar with the accused l^and no corroborative or other circumstantial evidence links the accused to the crime. Thus, it seems reasonable in a death penalty case that, out of fairness, the defendant should be allowed to call an expert witness to discuss “how suggestive police procedures can lead good people to pick a photo not based on their perceptions and memory but as a result of poor police investigative procedures.”
Because many jurisdictions allow such expert witnesses to testify, I ponder why this state does not allow such testimony in cases such as the present one where the defendant was charged with murder (La. R.S. 14:30) and the death penalty was on the line. If an accused cannot call such a witness in a death penalty case, even one where the crimes are as horrific as the present ones, under what circumstances will an accused be allowed to do so, given that many studies exist that call into question the validity of eyewitness identification.[3]
A recent decision of New Jersey’s Supreme Court, State v. Henderson, 208 N.J. 208, 27 A.3d 872 (2011), in significant detail addresses the reliability of eyewitness identifications[4] and the use of expert witnesses to address the issue. I do not think, as some writers have averred in opposing the admissibility of such expert evidence, that the expert will have a greater influence on the jury than the eyewit *1169 nesses. An ordinary jury charge in a case where an expert has testified explains to the jury the difference between an expert witness and an ordinary witness. That difference is merely that a person qualified as an expert by the court in some professional, art, or science is permitted to express an opinion in the field in which he has been qualified as an expert; just because the witness has been qualified as an expert does not make him a “super” witness whose testimony is entitled to greater weight than any other witness, expert or lay. That is, I trust | iajurors to apply the law to the facts. And I do not find that jurors are so naive as to believe an expert simply because he has been qualified as such; jurors, by their own life experiences, possess common sense and know when they are hearing bunkum. The methodology of the expert can be reliably tested in a Daubert/Foret hearing.
Thus, I am required to concur with the affirmation of the conviction and sentence of Mr. Henry, relying upon the latest expression of the Supreme Court in Young.

. The issue was raised by the defendant again in a slightly different context on an application for new trial,

. The case was decided before Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and State v. Foret, 628 So.2d 1116 (La.1993).

. In an amicus brief filed in this case by The Innocence Project and Innocence Project New Orleans, a substantial listing of studies is disclosed that demonstrate that the potential unreliability of eyewitness identification is not junk science.

. Concededly, the Court was addressing cross-racial identifications, which does not appear applicable in the case at bar.